The People of the State of Illinois ex rel. Oscar Nelson, as Auditor of Public Accounts, Complainant, v. Binga State Bank et al., Defendants. Edward H. Morris, Receiver of Binga State Bank, Appellee. Amended Intervening Petition of Judge H. Parker, Appellant.

### Gen. No. 35,747.

Opinion filed June 28, 1932. Rehearing denied July 11, 1932.

A. M. BURROUGHS, for appellant.

JAMES B. CASHIN, for appellee; THOMAS P. HARRIS, of counsel.

Mr. Justice Gridley delivered the opinion of the court.

During December, 1931, there was a hearing upon the separate amended intervening petitions, filed in this cause, of Judge (a name and not a title) H. Parker and the Parker House Sausage Company, a corporation. To the petitions Edward H. Morris, as receiver of the Binga State Bank, had filed separate answers. On December 9, 1931, the court ordered and adjudged that the petitions, as to the crediting of $6,367.50 upon the unpaid note of $8,000 of said Parker in the receiver's hands as an asset of the Bank, be denied and dismissed for want of equity. From the order or judgment Parker prayed for and perfected the present appeal. The Sausage Co., although it also prayed for an appeal, did not perfect it.

After the filing here of the transcript of the record, the receiver (appellee) made two motions: (1) To strike certain exhibits from the transcript, and (2) to dismiss the appeal. Both motions were denied.

The following facts in substance appear from the evidence: In the year 1922, Parker, individually, was engaged in Chicago in the manufacture and sale of sausages, under the trade name of "Parker House Products." In December, 1922, he opened a checking account in the Binga State Bank and checks were printed for his use, bearing the label "Parker House Products, Mfgr. of Parker House Sausage." On November 16, 1926, for money loaned to him, Parker executed and delivered to the Bank his two notes— one for $8,000 and the other for $4,000, each secured by trust deeds running to the Chicago Title & Trust Co., as trustee, and executed by Parker, a bachelor, and conveying his factory and the ground upon which it stood. The note for $8,000 was payable three years after date. The trust deed securing it was a first mortgage, and the trust deed securing the $4,000 note,

maturing in one year, was subject thereto. The money loaned by the bank was for use by Parker in improving his property and further equipping his factory. On April 18, 1927, he caused an Illinois corporation to be formed under the name of "Parker House Sausage Company," with capital stock of $25,000. He subscribed for and became the owner of $24,800 of the stock, and Ella Cage, his mother, and Evelyn Anderson, his sister, each subscribed for and became the owners of $100 of the stock. Parker paid for his stock by transferring to the company his factory, machinery and equipment, the land occupied by the factory and the good will of his business. The other two stockholders paid for their stock in cash. At the first meeting of the stockholders the three were elected directors of the company, and they in turn, at the first meeting of the directors held on May 1, 1927, elected Parker as president, Mrs. Anderson as secretary and Mrs. Cage as treasurer. By-laws also were adopted and the annual salaries, payable in weekly instalments, of Parker as president, and of Mrs. Anderson as secretary, were fixed. About May 5, 1927, the bank was notified of the incorporation, and, at Parker's request, it changed the account to read "Parker House Sausage Company." Thereafter all deposit slips were made out in the company's name and Parker, alone, signed all checks drawn on the account. He did not thereafter have any individual checking account with the bank. During October, 1927, the *company* delivered to the bank its note for $4,000, secured by a second mortgage on said factory and land, and the bank canceled the individual note of Parker for $4,000, dated November 16, 1926. There still remained in the bank Parker's individual note of $8,000, which matured on November 16, 1929, and which was secured by said first mortgage, and upon which no payments had been made. The company's trust deed securing

the new $4,000 note, dated October 5, 1927, is signed by Parker as "president," and is made subject to the trust deed of Parker individually, dated November 16, 1926, securing Parker's said note of $8,000, and therein the company "covenants and agrees to pay all prior incumbrances." Between May 5, 1927, and July 31, 1930, the company maintained an active deposit and checking account with the bank. The interest on Parker's $8,000 note, as it matured, was paid to the bank by check drawn on the company's said account. When the note matured on November 16, 1929, *Parker,* individually, renewed it for an additional three years. The expenses incurred for the renewal were paid by checks drawn on the company's account with the bank.

The bank was closed by the auditor of public accounts on July 31, 1930, and Edward H. Morris was appointed receiver of it on November 26, 1930. When it was closed there was a balance in said checking account to the credit of the Sausage Co. of $6,367.50. Subsequently in the above entitled cause the company filed a petition, signed in its name by "Judge H. Parker, President," and attested by the signature of Mrs. Anderson, its secretary, and with the corporate seal attached, and praying for an order on Morris, as receiver, "to credit the sum of $6,367.50, on deposit in the commercial account of the Parker House Sausage Company, *to the note of Judge H. Parker for $8,000,* dated November 16, 1926, and secured as aforesaid." In the petition it is represented, *inter alia,* "that when said trust deed and note were executed by Judge H. Parker, he was the owner of said property, and after the incorporation of the undersigned, this property (subject to the payment of said mortgage) was sold and transferred to the undersigned and is now its property; that when the Binga State Bank closed on July 31, 1930, the *undersigned* (i. e., the com-

pany) *had on deposit* with said Bank, in a commercial account, the sum of $6,367.50''; and that Morris, as receiver, ''has refused to credit the note and trust deed of Judge H. Parker on said property, claiming that said note and mortgage was. not the note and mortgage of your petitioner (i. e., the company), and therefore not susceptible to set off.''

Subsequently, on April 17, 1931, by leave of court, the Sausage Co. was given leave to file an amended petition by joining Parker, individually, as a copetitioner. Such petition was filed, and on May 8, 1931, the demurrer of the receiver to it was sustained *as to form,* and, by leave of court, Parker was given leave to file, and he filed, an amended petition. To this petition the receiver filed a general demurrer. On June 12, 1931, on Parker's motion, the court gave him leave to withdraw the amended petition and to file another amended petition, which was filed, signed and sworn to by Parker. After setting forth certain facts as to the execution of the two notes, secured by said trust deeds, and as to the organization of the Sausage Co., etc., the petition alleged:

That when the Binga State Bank closed on July 31, 1930, ''Judge H. Parker, under the name and style of 'Parker House Sausage Company,' had on deposit in the bank in a commercial account the sum of $6,367.50, and the account is the *personal* account of Judge H. Parker, *because* the Parker House Sausage Co. is not designated as a corporation, and the deposit should, therefore, be credited on the note of Judge H. Parker; that when the Sausage Co. filed its original petition with this court, it did so by its officers and upon information and belief that the account in said bank was in the corporation, and did not learn that all withdrawals were made by Parker, individually, until April 10, 1931, when it discovered that the account was not in the name of the corporation, but in

the name of Parker individually, and, therefore, subject to set-off against the note of Judge H. Parker''; that Morris, as receiver, ''has refused to credit'' the note and trust deed of Parker with said sum of $6,367.50, ''contending that said account is the account of the Parker House Sausage Co., a corporation, and not the personal account of Parker and cannot be set off against the personal note of Parker.''

The ''bill of exceptions,'' certified to by the trial judge, discloses that at the conclusion of said hearing on December 9, 1931, the court found that ''from the evidence heard, the money on deposit belongs to the corporation,'' and thereupon denied the said amended petitions and dismissed them for want of equity, as first above mentioned.

After a careful review of the present transcript we are of the opinion that said finding of the court is fully sustained by the evidence, and that the dismissal of the petitions for want of equity is not contrary to the law, as here urged by Parker's counsel. In 7 Corpus Juris, sec. 535, p. 745, it is said: ''Only a direct and ascertained indebtedness can properly be set off against a claim due to a bank, and where the debts are not due to and from the same persons in the same capacity the right of set-off does not exist.'' In 1 Morse on Banks and Banking, 5th Ed., sec. 334, p. 627, it is said: ''The rules of law as to the right of set-off between the bank and its depositors are not different from those applicable to other parties. The debts must be between the same parties and in the same right. A deposit due to A, as executor, cannot be offset against A's personal debt, nor *vice versa*.'' In *Coates v. Preston*, 105 Ill. 470, 472-3, it is said: ''It is a familiar principle that debts, to be the subject of set-off, must be mutual between the parties to the action. That is not the case here. The debt offered to be set off is the debt of the firm against the claim

of one of the individual partners. That cannot be done, and so this court held in *Hilliard v. Walker,* 11 Ill. 644." In *International Bank v. Jones,* 119 Ill. 407, 410, it is said: "The general rule is, that a bank has a right of set-off, as against a deposit, only when the individual, who is both depositor and debtor, stands, in both these characters alike, in precisely the same relation and on precisely the same footing, towards the bank, and hence an individual deposit cannot be set off against a partnership debt." (See, also, *Stuart v. Lott,* 304 Ill. 170, 175.) These principles are applicable to the present case. Here it clearly appears that Parker, as an individual, is indebted to the bank on his unpaid note for $8,000; that the Sausage Co., of which he is president and the owner of a majority of its stock, had on deposit in the bank on July 31, 1930, when it was closed by the auditor of public accounts of this State, the sum of $6,367.50, which the bank owed to said *company;* and that Parker, as an individual, prayed to have said sum, belonging to the *company,* applied to the payment *pro tanto* on *his* said note, an asset of the bank in the receiver's hands. The court properly held, in our opinion, that this could not be done. Parker and the corporation are separate legal entities and the debts are not between the same parties or in the same right.

The order or judgment of the circuit court of December 9, 1931, denying and dismissing the said amended petitions is affirmed.

*Affirmed.*

KERNER, P. J., and SCANLAN, J., concur.